UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUIS LUIBIL, : | |
| : | |
| Petitioner, : | Civ. No. 19-16548 (KM) |
| : | |
| v. : | |
| : | |
| GEORGE ROBINSON, et al., : | **OPINION** |
| : | |
| Respondent. : | |

**KEVIN MCNULTY, U.S.D.J.**

**I.      INTRODUCTION**

Petitioner Louis Luibil, a state prisoner at Northern State Prison in Newark, New Jersey, is proceeding by counsel with a habeas petition pursuant to 28 U.S.C. § 2254. (DE 1 (the "Petition").) I previously issued an order directing Petitioner to show cause why the Petition should not be dismissed as untimely pursuant to 28 U.S.C. § 2244(d) and Rule 4 of the Rules Governing § 2254 cases, in that it was filed well past the one-year limitations period imposed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") (DE 2.) Having now reviewed Petitioner's response to the order to show cause (DE 5), I will dismiss the Petition as untimely and deny a certificate of appealability.

**II.     BACKGROUND**

For the purposes of this opinion, I mostly credit Petitioner's timeline, which is well documented. According to the Petition, in December 2003, a jury in the Superior Court of New Jersey, Passaic County, convicted Petitioner of carjacking, and the trial judge sentenced him to 34 years in prison with 85% parole ineligibility. (Petition ¶¶ 1-6.).[1] The Appellate Division affirmed the conviction on November 14, 2005. (*Id.* at 73.) The New Jersey Supreme Court denied certification of Petitioner's direct appeal on January 31, 2006. (*Id.* at 79). Petitioner's conviction became final, and the AEDPA clock began running, 90 days later on May 1, 2006, because Petitioner did not seek certiorari from the Supreme Court. U.S. Sup.Ct. R. 13.1.

---

[1] Petitioner was represented at trial by private counsel, and by the New Jersey Office of the Public Defender on direct appeal. (Petition at 62, ¶ 16.) As discussed below, Petitioner was represented by different private counsel on his first and second PCRs.

Shortly after the New Jersey Supreme Court's denial of certification, Petitioner's family friend, Carol Cotugno, retained the Law Offices of Fusco & Macaluso, P.A. (the "Fusco Firm") to pursue a state post-conviction relief petition ("PCR").[2] (DE 5-2 ("Cotugno Aff.") ¶ 1.) Cotugno paid $10,000 toward the $25,000 retainer on May 15, 2006 (14 days into the AEDPA limitations period). (Cotugno Aff. ¶ 1; DE 5 at 11.). On June 26, 2006, Cotugno paid another $12,000. (Cotugno Aff. ¶ 3; DE 5 at 12.)

On March 25, 2008, Cotugno paid an additional $2,500 to the Fusco Firm, leaving a balance of $500. (Cotugno Aff. ¶ 4, DE 5 at 13.) On December 2, 2008, the Fusco Firm filed the first Petition for Post-Conviction Relief. (Petition at 5, ¶ 11(a)(4).)[3] On January 7, 2009, Cotugno paid the remaining $500 of the retainer. (Cotugno Aff. ¶ 5, DE 5 at 14.)

While the first PCR was pending, the New Jersey Supreme Court reprimanded and suspended Anthony Fusco, a Fusco Firm partner, as the result of two ethics inquiries.[4] (Pet'r Aff. ¶ 10.) *In re Fusco*, 197 N.J. 428, 429, 963 A.2d 816 (2009). On July 10, 2009, after Fusco had been reinstated, the Superior Court denied Petitioner's first PCR. (Petition at 83.) As of March 11, 2010, the New Jersey Office of the Public Defender replaced Fusco as Petitioner's counsel and briefed Petitioner's first PCR appeal. (*Id.* at 23.) On January 10, 2012, the Appellate Division affirmed the first PCR denial. (*Id.* at 94.) On September 7, 2012, the New Jersey Supreme Court affirmed that denial of the first PCR. (*Id.* at 99.)

On or about May 26, 2013, Petitioner mailed a letter to this Court requesting updated habeas corpus forms. "[S]everal months of requesting" forms from his prison library, he wrote, produced only outdated forms. (*Id.* at 128.) At about the same time, Petitioner mailed a *pro se* second PCR petition to the New Jersey Superior Court. (*Id.* at 129.) On June 12, 2013, the Superior Court acknowledged receipt and sent an indigency application. *Id.*

---

[2] The Fusco Firm provided receipts for all payments, but never a written retainer agreement. (Cotugno Aff. ¶ 2.)

[3] The first PCR was dated March 22, 2008, but not filed until December 2. (Petition at 62, ¶ 18.) As I noted in the order to show cause, however, even the earlier date was nine months after the AEDPA limitations period's expiration. (DE 2 at 2, n. 1.)

[4] Petitioner is incorrect that the suspension was for a year. (Pet'r Aff. ¶ 10.) The Disciplinary Review Board recommended one year, but the New Jersey Supreme Court issued a three-month suspension. Likewise, Petitioner's counsel is incorrect that Fusco was suspended during the first PCR oral argument on July 2, 2009. (DE 5 at 9.) Fusco was reinstated on June 1, 2009. *In re Fusco*, 199 N.J. 117, 970 A.2d 1038 (2009).

The record does not reflect any further activity until a year later in June 2014, when Cotugno contacted Petitioner's current counsel. (DE 5 at 3.) Petitioner retained current counsel on July 31, 2014, nearly two years after the conclusion of the first PCR. (*Id.*) On December 17, 2014, Petitioner, by current counsel, filed a second PCR petition. (*Id.* at 101.) On September 2, 2016, the Superior Court denied that PCR. (*Id.* at 103.) The Appellate Division affirmed the denial on October 9, 2018, and the New Jersey Supreme Court again denied certification on April 4, 2019. (*Id.* at 123-128.)

On August 10, 2019, Petitioner filed this § 2254 habeas petition. (DE 1.) Petitioner, in his response to the order to show cause, blames the apparent untimeliness on Fusco: "[T]he failure of the Fusco Firm to advise properly the Petitioner as to this one-year time limit also impacted the delay in the filing of the second PCR Petition following the conclusion of the [first PCR] with the denial of certification…on September 7, 2012." (DE 5 at 3.) It is conceded that Cotugno did not contact second PCR/current habeas counsel until June 2014 or formally retain current counsel until July 31, 2014, nearly two years after the conclusion of the first PCR. (*Id.*) Both Petitioner and Cotugno state, however, that they "would not have waited" if the Fusco Firm had explained the one-year AEDPA limitations period. (Cotugno Aff. ¶ 10; Pet'r Aff. ¶ 9.)

### III. DISCUSSION

#### A. Statutory Tolling

AEDPA imposes a one-year limitation period for a state prisoner to file a federal habeas corpus petition. The limitation period ordinarily starts to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). Under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." In other words, AEDPA's statute of limitations is suspended while a "properly filed" collateral attack remains pending in the state courts. That exclusion of time is known as "statutory tolling."

As discussed above, Petitioner's conviction became final on May 1, 2006, when Petitioner did not seek certiorari from the Supreme Court. Because no PCR petition was filed until December 2, 2008 (or, as discussed above, even in March of that year), the AEDPA clock continued to run during that period. The clock expired—as Petitioner's counsel concedes—on

May 1, 2007. (DE 5 at 1.). Thus, the suspension of statutory tolling cannot save Petitioner's habeas petition, because it was already time-barred when it was filed. *See Saunders v. Lamas,* No. 12–1123, 2013 WL 943351, at *5 (E.D.Pa. Feb. 3, 2013) (petitioner's PCR was filed after the expiration of AEDPA's one-year clock, making statutory tolling inapplicable) (citing *Pace v. DiGuglielmo,* 544 U.S. 408 (2005)), *report and recommendation adopted by,* 2013 WL 943356 (E.D.Pa. Mar. 11, 2013); *Shoatz v. Diguglielmo,* No. 07–5424, 2011 WL 767397, at *1 n. 2 (E.D.Pa. Feb. 25, 2011) ("Because all of petitioner's subsequent PCRA petitions were filed after his one-year limitation period expired ... none of these filings entitle petitioner to statutory tolling, regardless of their disposition."). Absent some other basis for tolling, the habeas petition is untimely.

### B. Equitable Tolling

Petitioner's response focuses on another avenue to preserve untimely habeas claims: equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)). "There are no bright lines in determining whether equitable tolling is warranted in a given case." *Pabon,* 654 F.3d at 399. The Supreme Court has emphasized, however, that in considering whether there could be equitable tolling, courts should favor flexibility over adherence to mechanical rules, and make each decision on a "case-by-case basis." *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010)). "[E]quitable tolling is appropriate when principles of equity would make the rigid application of a limitation period unfair, but ... a court should be sparing in its use of the doctrine." *Varano,* 712 F.3d at 799.

Here, Petitioner alleges that he pursued his rights diligently, and that his first PCR attorney's failure to advise him of the one-year AEDPA deadline or promptly file the first PCR petition constituted an "extraordinary circumstance" meriting equitable tolling. As to diligence, "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence." *Id.* (citing *Holland,* 130 S.Ct. 2565). The petitioner must have exercised such reasonable diligence with respect to both the exhaustion of state remedies and the filing of the federal habeas petition. *See id.* "A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of

4

the particular circumstances of the case." *Id.* (citing *Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir.2004); *Doe v. Busby,* 661 F.3d 1001, 1013 (9th Cir.2011)). That a petitioner may be proceeding *pro se* "does not insulate him from the 'reasonable diligence' inquiry." *Id.* at 799–800.

Petitioner cites *Ross* for the proposition that the Third Circuit has forgiven even a lengthy five-year delay where there is significant evidence of attorney malfeasance or negligence. (DE 5 at 6-7.) *Ross* and this case do share some similarities: For example, the Third Circuit found in *Ross* that between 2004 and 2008, the petitioner's attorney ignored or refused regular correspondence and had very little knowledge of the case. 712 F.3d at 794. As in *Ross*, after Petitioner Luibil's conviction became final, he or his family friend Ms. Cotugno promptly secured Fusco's representation. Though the exact reasons for Fusco's failure to file either a protective federal habeas petition or a first PCR petition within one year are unclear, I credit Petitioner's diligence during that time period, noting multiple communications between Cotugno, Petitioner, and Fusco's office. (Cotugno Aff. ¶ 6; Pet'r Aff. ¶ 8.)

Even so, however, *Ross* is ultimately distinguishable, because it did not rest solely on attorney neglect. There, the Third Circuit found in addition that the petitioner had "a limited intellectual ability and education, a history of poor mental health, and [was] an incarcerated prisoner with limited resources at his disposal who was moved among facilities within the prison system." 712 F.3d at 803–04. Additionally, the *Ross* petitioner's efforts to obtain new counsel were impeded by a state court's denial of new counsel based on the (incorrect) assumption that the petitioner's current attorney was moving the case forward. Nothing similar is in the record here; Petitioner's argument here is limited to criticizing Fusco's failure to advise Petitioner of the one-year AEDPA deadline.

Moreover, even if I ascribe any untimeliness to Fusco, Fusco's representation spanned, at most, from May 1, 2006, when Petitioner's conviction became final, through 2010, when the Public Defender replaced Fusco on Petitioner's first PCR appeal. (Petition at 23.) But Petitioner also had other attorneys before that: private counsel at trial, and the Public Defender on direct appeal.

Petitioner also demonstrated awareness of state and federal procedures. He filed a second, pro se PCR petition on or about May 26, 2013, 261 days after the Supreme Court denied certification on September 7, 2012, and wrote to the Clerk of this Court to request a habeas form

at about the same time. (*Id.* at 128-29.) The record does not reveal whether or how the Clerk responded to Petitioner's letter.

Petitioner's letter indicates at least some awareness of the existence of a habeas remedy, if not a deadline. However, even accepting that Petitioner first learned of the one-year AEDPA deadline when he retained current counsel in 2014 (Pet'r Aff. at 3, ¶ 9),[5] Petitioner still waited five years from that point to file any habeas petition, and over thirteen years from the point that his conviction became final. *See Pace v. Diguglielmo*, 544 U.S. 408, 416 (2005) (petitioner may file "a 'protective' petition in federal court and ask[ ] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted") (internal citations omitted); *Darden v. Sobina*, 477 Fed. App'x. 912, 918 (3d Cir. 2012) (petitioner failed to diligently pursue his federal rights by not filing a "protective" federal petition while pursuing state collateral relief); *Heleva v. Brooks*, 581 F.3d 187, 192 (3d Cir. 2009) (petitioner may seek a "protective" petition despite presenting only unexhausted claims). That a petitioner is proceeding pro se does not insulate him from the "reasonable diligence" inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling. *See Brown v. Shannon,* 322 F.3d 768, 774 (3d Cir.2003) (equitable tolling not justified where petitioner had one month left in limitations period in which he could have "fil [ed] at least a basic pro se habeas petition" at the time that petitioner's attorney informed him that he would not file an appeal in state court on his behalf and could no longer adequately represent him); *see also Doe v. Menefee,* 391 F.3d 147, 177 (2d Cir.2004) ("Given that we expect pro se petitioners to know when the limitations period expires ... such inadvertence on Doe's part cannot constitute reasonable diligence.").

Thus, even excluding the period before Petitioner's current counsel represented him, Petitioner did not diligently pursue his *federal* rights after Fusco no longer represented him, and thus is not entitled to equitable tolling on that basis. *Darden v. Sobina*, 477 F. App'x 912, 918 (3d Cir. 2012) (finding that petitioner failed to diligently pursue his federal rights by not filing a

---

[5] I note that the older § 2254 habeas forms Petitioner acknowledged receiving, or the form in use at the time of Petitioner's letter to this Court, like the current version, contain this field: "TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition." *See* AO-241 (Rev. 12/04 and 10/07) at ¶ 18. I note also that submission of a habeas petition, even on an outdated form, would ordinarily be credited by this Court as a filing for purposes of the AEDPA deadline.

"protective" federal petition while pursuing state collateral relief)); *Bennett v. Clark*, No. CV 16-3687, 2017 WL 6758399, at *5 (E.D. Pa. Feb. 1, 2017) (finding lack of diligence where petitioner promptly filed state post-conviction petition but did not file federal petition until a decade later), *report and recommendation adopted*, No. CV 16-3687, 2017 WL 6731622 (E.D. Pa. Dec. 29, 2017); *Cutler v. Davis*, No. CV 20-9011 (JMV), 2021 WL 2411306, at *4 (D.N.J. June 14, 2021) (dismissing petition where petitioner did not file any habeas petition, including a protective petition, for sixteen years).

Moreover, even if Petitioner could demonstrate diligence, he would still fail to satisfy equitable tolling's second requirement: that an "extraordinary circumstance" stood in the way of satisfying AEDPA's one-year deadline, because there was no obstacle beyond Petitioner's control that prevented him from filing a petition. To address this prong, Petitioner again blames Fusco's representation (the failure to provide a written retainer agreement and his suspension from the practice of law), and Fusco's failure to advise him of AEDPA time limitations. But even an attorney's mistaken advice, or lack of advice, as to a deadline does not suffice to as a basis for equitable tolling. *Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002) (joining other courts in rejecting the argument "that an attorney's mistake in determining the date a habeas petition is due constitutes extraordinary circumstances for purposes of equitable tolling"); *Taylor v. Palmer*, 623 F. App'x 783, 788 (6th Cir. 2015), citing *See Lawrence v. Florida,* 549 U.S. 327, 336, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling."); *see also Cristin v. Wolfe,* 168 F. App'x 508, 511 (3d Cir.2006) (not precedential) ("[g]enerally, an attorney's delinquency is chargeable to a client and is not a basis for equitable tolling.")).

Moreover, as discussed above, even accepting that Fusco's representation had a material impact on Petitioner's ability to exercise his rights would apply only to the time during and perhaps shortly after Fusco's representation—not indefinitely. After that period, Petitioner fails to suggest that "there was an obstacle *beyond Petitioner's control that necessarily prevented* him from filing a timely petition, [and] there is no basis for equitable tolling." *Phillips v. D'Illio*, No. 15-2884, 2016 WL 54673, at *4 (D.N.J. Jan. 4, 2016) (PCR counsel failed to file a protective petition) (emphasis added). Even if Petitioner's late filing was due to his lack of legal knowledge and awareness of the AEDPA's limitations period, that does not warrant equitable tolling. *See, e.g.*, *Walker*, 2013 WL 3223552, at *11 (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.

7

1999) ("ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing")). Accordingly, Petitioner fails to satisfy either equitable tolling prong, and the Petition is untimely.

## IV.     CERTIFICATE OF APPEALABILITY

AEDPA provides that an appeal may not be taken to the Court of Appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability stating that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* I will deny a certificate of appealability because jurists of reason would not find it debatable that this petition is untimely.

## V.     CONCLUSION

For the reasons stated above, I will dismiss the Petition for habeas corpus as untimely and deny a certificate of appealability. An appropriate order follows.

Dated: November 1, 2021

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge